Cameron G. Coyle
James G. Womack
Embry Merritt Womack Nance, PLLC
Chase Tower
201 E. Main St., 14th Floor
Lexington, KY 40507
P: (859) 543-0453
E: james.womack@emwnlaw.com
E: cameron.coyle@emwnlaw.com
*Attorneys for Plaintiff*

### IN THE FEDERAL DISTRICT COURT FOR
### THE WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| Tomahawk Cattle Company, LLC )<br>    A Wyoming limited liability company )<br>)<br>)<br>    Plaintiff, )<br>)<br>)<br>vs. )<br>)<br>Oliver Livestock, LLC, a Kentucky limited liability )<br>Company, Greg Oliver, Ezra Oliver, Wesley )<br>Oliver, Steve Ray, DVM, and Rock Solid )<br>Veterinary Services, PLLC )<br>)<br>    Defendants. | Case No. 1:25CV-90-GNS |

### COMPLAINT

Plaintiff, Tomahawk Cattle Co., LLC, by and through counsel, states and alleges for its Complaint as follows:

    1.    Plaintiff, Tomahawk Cattle Co., LLC (hereinafter referred to as "Tomahawk Cattle"), is a Wyoming limited liability company with its principal place of business being located in Park County, Wyoming.

    2.    Kyle Woodward is the principal of Tomahawk Cattle Co.

3. Defendant, Oliver Livestock, LLC (hereinafter referred to as "Oliver Livestock"), is a Kentucky limited liability company headquartered in Campbellsville, Kentucky.

4. Defendant Ezra (Eserah) Oliver is, and was at all times relevant to this Complaint, a member of Oliver Livestock who participated in its operation and the management of its activities.

5. Defendant Wesley Oliver is, and was at all times relevant to this Complaint, a member of Oliver Livestock who participated in its operation and the management of its activities.

6. Defendant Greg Oliver is, and was at all times relevant to this Complaint, an employee or agent of Oliver Livestock.

7. At all times relevant to this Complaint, Greg, Ezra, and Wesley Oliver were acting within the course and scope of their employment and/or agency of Oliver Livestock.

8. Steve Ray is a Doctor of Veterinary Medicine with a practice in Columbia, Kentucky. Plaintiff reserves the right to assert claims against Steve Ray should evidence and discovery demonstrate the existence of such claims.

9. Rock Solid Veterinary Services, PLLC is a veterinary practice in Kentucky through which Steve Ray practices. Plaintiff reserves the right to assert claims against Rock Solid Veterinary Services, PLLC should evidence and discove1y demonstrate the existence of such claims.

10. Oliver Livestock represents itself as a cattle operation that markets and sells cattle, and it does so via electronic means, advertising itself via electronic media.

11. Oliver Livestock accordingly markets its cattle beyond the borders of Kentucky and throughout the United States.

12. Tomahawk Cattle Co, through Kyle Woodward, discovered Oliver Livestock's advertisement for cattle and contacted Oliver Livestock to inquire if it had 90 head of 3 to 6 year old bred black angus cattle. An arrangement to purchase the same and ship the cattle to Wyoming, based upon Oliver Livestock's representations, including photographs of the cattle that were advertised for sale, and about the age and health of the cattle was accordingly made.

13. The contract was for 90 head of 3 to 6 year old Black Angus cattle that were spring calvers.

14. The agreed upon price was $127,500 per head for the 90 head of cattle.

15. It was agreed that the cattle were to be trucked to Wyoming and delivered.

16. Oliver Livestock represented that it had previously successfully shipped livestock to Montana.

17. The health of the cattle was to be certified.

18. Steven Ray of Rock Solid Veterinary Services issued a Certificate of Veterinary Inspection on the 90 head of cattle.

19. Sixteen of the first lot of 90 cattle shipped died within one week of delivery.

20. Many of the 90 head of cattle were far older than six years old.

21. Not all of the 90 head of cattle were Black Angus.

22. Calves started to be born to the 90 head of cattle far earlier than contracted for.

23. One day after the contract for 90 head of spring calves was made, an additional contract for 42 heavy bread Black Angus was made.

24. The 42 head were represented to be done calving by October.

25. The 42 were to be certified to be in good health.

26. The purchase price for the 42 head was $68,670.

27. Steven Ray of Rock Solid Veterinary Services issued a Certificate of Veterinary Inspection on the 42 head of cattle.

28. Steven Ray of Rock Solid Veterinary Services certified 19 of the cattle were currently pregnant, which was a misrepresentation as the 19 cattle were open and not pregnant.

29. The 42 head of cattle that were sent were not as represented. Four died immediately, two calves were still born, and the majority of the 42 head calved after mid-December 2023.

30. All cattle for both sales were to be inspected in order to certify that they were in good health generally and that they were healthy enough to travel the involved distance, and to assure that the cattle had the proper testing and vaccinations.

31. The herd Plaintiff bought from Defendant was infected with BVD, causing Plaintiff to lose 23 of the cattle, with 16 deaths coming within the first week.

32. The received cattle were in poor health and lacked proper testing and vaccinations. The cattle had to be quarantined.

33. The cattle were illegally transported across state lines, as the proper vaccinations were not given to the animals, causing the Wyoming Livestock Board to place Mr. Woodward, the President of Tomahawk Cattle, in quarantine and increase his feed cost as he was not able to access the winter grazing ground.

34. Plaintiff was forced to purchase 13 pairs of cattle from Wyoming and 3 Wyoming bred cows to offset the death loss and mitigate damages.

35. False representations made by the Defendants regarding the cattle's calving forced Plaintiff to sell 17 "fall calving" pairs in December 2023.

36. Plaintiff was forced to sell 8 cows as "opens," after they had still born offspring, which resulted in the Kentucky herd size diminishing to 84 cattle.

37. 47 of the remaining 84 cattle were confirmed by a Wyoming veterinarian to be aged well outside of the contracted age limit of 3-6 years old. 90% of the cattle were at least 6 years old, causing Plaintiff to miss out on lost generations of calf crops, as Plaintiff will have to rebuild half its herd over the upcoming years.

38. Plaintiff then lost 23 calves due to being birthed in extreme low temperatures due to births happening much earlier than the time contracted for and the infection of BVD in Plaintiff's herd.

39. With the additional 23 calves lost and the 19 cattle sold to Plaintiff unable to be bred, Plaintiff only sold 50 heads of calves in 2024.

40. The photographs that advertised the cattle remained in use, with Oliver representing that it had cattle to sell that were represented by the same photographs that were used to represent the cattle sold to Tomahawk after Tomahawk had taken delivery of the 90 head of cattle and the 42 head of cattle.

41. Prior to filing this litigation, Tomahawk made demand upon Oliver Livestock for damages, including loss for death, loss value for age, increased feed expenses due to improper calving date representations, and veterinary expenses.

42. Jurisdiction exists in this court and is proper as Defendants are residents of Campbellsville, Kentucky.

## CAUSES OF ACTION

### COUNT I – BREACH OF TWO CONTRACTS BY OLIVER LIVESTOCK, LLC

43. Plaintiff restates and realleges paragraphs 1 through 42 as if fully restated herein.

44. Tomahawk and Oliver Livestock entered into two contracts for the delivery of cattle to Wyoming, as set forth above.

45. Neither lot of cattle comported with the terms of the contract in terms of heath, age, or calving dates.

46. The failure of the cattle to be as described is a breach of both aforementioned contracts.

47. Oliver Livestock is liable to Tomahawk in an amount to be determined at trail.

### COUNT II – BREACH OF CONTRACT BY STEVE RAY, DVM.

48. Plaintiff restates and realleges paragraphs 1 through 47 as if fully restated herein.

49. Steve Ray, DVM, individually or through Rock Solid Veterinary Services, had a contract for the testing and certification of good health of the cattle referenced in this Complaint.

50. The cattle were intended for delivery to Tomahawk Cattle Company in Wyoming.

51. The testing and inspection were for the ultimate benefit of Tomahawk Cattle Company.

52. Tomahawk was the third party beneficiary of the contract between Rock Solid Veterinary Services and Oliver Livestock.

53. The failure to property test the cattle for health and vaccinations constituted a breach of contract which harmed Tomahawk Cattle Company for which Steve Ray, DVM, and Rock Solid Veterinary Services are liable in an amount to be determined at trial.

### COUNT III – BREACH OF GOOD FAITH AND
### FAIR DEALING BY OLIVER LIVESTOCK

54. Plaintiff restates and realleges paragraphs 1 through 53 as if fully restated herein.

55. Oliver Livestock, through its actions referenced above, acted in bad faith and accordingly breached the covenant of god faith and fair dealing in contracts for which it is liable.

56. Said actions included, but are not limited to, misrepresenting the age, condition, nature and health of the 90 head of cattle and the 42 head of cattle.

57. Oliver Livestock is liable to Tomahawk in an amount to be demonstrated at trial.

## COUNT IV – FRAUD

58. Plaintiff restates and realleges paragraphs 1 through 57 as if fully restated herein.

59. Greg, Ezra, and Wesley Oliver made material misrepresentations about the 90 head and 42 head of cattle.

60. The material misrepresentations included misrepresentations about the cattle's age, health, and calving dates.

61. Said misrepresentation, upon information and belief, were calculated to induce Tomahawk Livestock to rely upon them to its detriment.

62. To the extent that Steve Ray participated in misrepresenting the health and condition of the livestock, he participated in fraudulent acts.

63. Said actions constituted fraud by which Tomahawk has sustained damages.

64. Greg, Ezra, and Wesley Oliver are individually liable to Tomahawk for the above referenced acts of fraud.

65. Oliver Livestock is liable for the actions of Greg, Ezra, and Wesley Oliver who are its members and agents.

66. Steve Ray is liable for his actions to the extent that he participated in the above referenced actions through his misrepresentation or omissions.

## COUNT V – NELIGENT MISREPRESENTATION BY GREG OLIVER, EZRA OLIVER, WESLEY OLIVER, AND OLIVER LIVESTOCK

67. Plaintiff restates and realleges paragraphs 1 through 66 as if fully restated herein.

68. Greg, Ezra, and Wesley Oliver made material misrepresentations about the 90 and 42 head of cattle.

69. Greg, Ezra, and Wesley Oliver, each individually, knew or should have known that said representations were misrepresentations.

70. The material misrepresentations included misrepresentations about the cattle's age, health, and calving dates.

71. Said misrepresentations, to the extent that they were not intentional, were negligent.

72. Greg, Ezra, and Welsey Oliver are individually liable to Tomahawk for the above referenced negligent acts.

73. Oliver Livestock is liable for the actions of Greg, Ezra, and Wesley Oliver who are its members and agents.

## COUNT VI – NEGLIGENCE PER SE

74. Plaintiff restates and realleges paragraphs 1 through 73 as if fully restated herein.

75. Defendants' transportation of diseased livestock violated KRS 257.040(4).

76. As a direct and proximate result of Defendants' negligence *per se*, Plaintiff suffered economic loss and was forced to be quarantined.

77. Defendants, jointly and severally, are liable to Plaintiff, as Plaintiff was within the class of people intended to be protected pursuant to KRS 257.040(4).

## COUNT VI – CIVIL CONSPIRACY

78. Plaintiff restates and realleges paragraphs 1 through 77 as if fully restated herein.

79. Greg Oliver, Ezra Oliver, Wesley Oliver, and Steve Ray combined in a meeting of the minds to misrepresent the age, health, nature, and condition of the 90 head of livestock and the 42 head of livestock.

80. Steve Ray participated in this action by certifying the cattle as healthy and vaccinated when they were not.

81. Their actions constituted fraud, which is a tort at law.

82. Their actions constituted fraud, which is a crime under the laws of the State of Kentucky.

83. Their actions constitute a Civil Conspiracy for which they are each individually liable.

## COUNT VII – BREACH OF IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE

84. Plaintiff restates and realleges paragraphs 1 through 83 as if fully restated herein.

85. In contacting Oliver Livestock, Tomahawk set forth certain criteria for the cattle which are well known within the cattle industry. Those criteria made it plain that Tomahawk was seeking to stock cattle suitable for a Black Angus cow calf operation.

86. In a cow calf operation, the time of the year in which the cows calve is critical for the stockman.

87. In an operation which has a specified breed of cow, having the breed of cow uniform in the herd is critical for marketing and for the reputation of the herd.

88. Oliver Livestock was aware of these factors and of the criteria which Tomahawk was purchasing the cattle under.

89. Oliver Livestock implicitly warranted that the livestock it was providing were suitable for the intended purpose of stocking a Black Angus cow calf operation.

90. In supplying cattle that did not meet the criteria, including but not limited to, departures in age, breed, and calving dates, Oliver Livestock breached the implied warranty for fitness for a particular purpose in what it sold and delivered.

91. In supplying cattle that did not meet the criteria, including but not limited to, departures in age, breed, and calving dates, Oliver Livestock breached the implied warranty of merchantability in what it sold and delivered.

92. Oliver Livestock is liable to Tomahawk Cattle in an amount to be proven at trial both for the common law breach of these warranties as well as for any remedies available under the Uniform Commercial Code.

## COUNT VIII – UNJUST ENRICHMENT

93. Plaintiff restates and realleges paragraphs 1 through 92 as if fully restated herein.

94. Oliver Livestock, as well as Greg, Ezra, and Wesley Oliver, received payment in exchange for livestock and shipping which were accepted by them.

95. The livestock were to be as described above.

96. The livestock were not as described.

97. Plaintiff has demanded restitution which has not been forthcoming.

98. Retention of the amount paid by Oliver Livestock, as well as Greg, Ezra, and Wesley Oliver, constituted unjust enrichment for which Oliver Livestock, as well as Greg, Ezra, and Wesley Oliver, are liable in an amount to be determined at trial.

## COUNT IX – CIVIL LIABILITY UNDER THE RACKETEERING INFLUENCED CRIMINAL ORGANIZATIONS ACT

99. Plaintiff restates and realleges paragraphs 1 through 98 as if fully restated herein.

100. Oliver Livestock and all of the individual defendants, Greg, Ezra, and Wesley Oliver, as well as Steve Ray, DVN, referenced above constitute an enterprise as they are an ongoing entity with a common purpose.

101. The acts described above constitute two or more acts within 2023 which constituted both civil and unindicted criminal fraud.

102. Oliver Livestock and the individual defendants participated in this activity.

103. The activity caused Tomahawk Livestock economic damages.

104. The above described acts give rise to a claim under the Racketeering Influenced Criminal Organizations Act entitling the Plaintiff to three times the amount of damages to be demonstrated at trial as well as attorney's fees and costs.

105. This Court has jurisdiction over this Federal Claim pursuant to *Tafflin v. Levitt*, 493 U.S. 455 (1990).

## COUNT X – PUNITIVE DAMAGES

106. Plaintiff restates and realleges paragraphs 1 through 105 as if fully restated herein.

107. The actions of the defendants, as described above, were willful and wanton, as well as demonstrating a state of mind on the part of each of the individual defendants to do harm to Tomahawk Livestock.

108. Each of the individual defendants is liable for punitive damages.

109. Oliver Livestock is liable for punitive damages due to the acts of the individual defendants who are its representatives or agents.

110. Rock Solid Veterinary Services is liable for punitive damages for the acts of Steve Ray, DVM.

**WHEREFORE**, Tomahawk Cattle Company prays this Court to find in its favor against the Defendants, to find the Defendants liable on the claims asserted above, and to award to Tomahawk Cattle Company such damages as are allowable by law, including treble damages under the RICO Act, as well as an award of attorney's fees and costs.

**DATED** this 3rd day of June, 2025.

          _/s/ Cameron G. Coyle_
          Cameron G. Coyle
          James G. Womack
          Embry Merritt Womack Nance, PLLC
          Chase Tower
          201 E. Main St., 14th Floor
          Lexington, KY 40507
          P: (859) 543-0453
          E: james.womack@emwnlaw.com
          E: cameron.coyle@emwnlaw.com
          *Attorneys for Plaintiff*